The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.   CR11-5232BHS |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S TRIAL BRIEF |
| v. | ) | |
| | ) | |
| MARK SKILES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The United States of America, by and through Jenny A. Durkan, United States Attorney, and Nicholas W. Brown and Roger Rogoff, Assistant United States Attorneys, respectfully submits this trial brief.

## I. **INTRODUCTION**

Defendant Mark Skiles is charged by Indictment with one count of Conspiracy to Unlawfully Deal in Firearms, in violation of Title 18, United States Code, Section 371, and one count of Unlawfully Dealing in Firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A).  The Indictment was returned on April 28, 2011.  Defendant Kenneth Gussoni, also charged in the Indictment, entered a plea of guilty on September 20, 2011.

Trial is currently scheduled for October 18, 2011.  The government anticipates calling approximately fifteen witnesses, and introducing approximately fifty exhibits during its case in chief.  Assuming reasonable cross-examination, the government anticipates completing the presentation of its case in chief within three full trial days.

Governments Trial Brief
CR11-5232BHS - 1
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## II. **BACKGROUND**

**A.    FACTS**

The evidence at trial will show that in approximately May 2009, the Bureau of Alcohol, Tobacco, and Firearms (ATF) began an investigation into the illegal sale of firearms at privately sponsored guns shows held within the Western District of Washington.  At these gun shows, federally licensed gun dealers (hereinafter referred to as "Federal Firearms Licensees" or "FFLs") and private individuals both rent space and set up tables to sell their firearms.  During the course of the investigation undercover agents attended these gun shows and observed numerous "private sellers" regularly selling guns in violation of federal law.

Pursuant to Title 18, United States Code, Section 922(a)(1)(A), it is unlawful for any person except a licensed dealer to engage in the business of dealing in firearms.  Contrary to this restriction, however, purportedly private gun sellers regularly and repetitively sold multiple firearms to undercover agents ATF agents at these gun shows.  ATF agents recorded these for-profit business transactions on videotape.  Each of the targets told one or more of the undercover agents that they frequently sold firearms at the gun shows and did so to make money.  Based on their comments to the agents, the frequency with which they attended and sold firearms at the shows, and the number, type, and manner of firearms displayed, these targeted sellers were clearly in the business of illegally selling firearms without a license.  The Defendant, Mark Skiles, and his former co-defendant Kenneth Gussoni, were two of these targets.

Between June 2009 through May 2010, ATF investigators observed Skiles and Gussoni together at numerous gun shows selling firearms as private sellers.  The two men operated as partners and always had their tables positioned next to each other.  The partners typically had anywhere from 15 to 30 handguns and rifles displayed on their table, with small signs indicating the prices for each.  During the course of the investigation, undercover ATF agents made contact with both men and purchased multiple firearms from each of them.  These undercover purchases include the following:

Governments Trial Brief
CR11-5232BHS - 2
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   two in June 2009; three in November 2009; three in May 2010; and one in August 2010.

2   The agents also observed the partners selling firearms to other people attending the

3   shows.  During each of the purchases, neither Skiles or Gussoni ever conducted a

4   background check, generated any paperwork other than a receipt, or ever checked

5   identification.

6       During many of these transactions, Skiles and Gussoni made a number of

7   comments that clearly indicated they were illegally dealing firearms without a license -

8   they admitted to regularly selling firearms at the gun shows; would take orders to

9   purchase guns; and acknowledged they were in the business of selling firearms to make

10  money.  For example, at the Centralia Gun Show in June 2009, Gussoni told an

11  undercover agent that he and Skiles did many gun shows together and that they were

12  planning on having a table at the upcoming Puyallup gun show.  At the November 2009

13  Monroe Gun Show, an undercover agent contacted Gussoni and inquired about

14  purchasing a specific firearm.  Gussoni stated that he would look into getting one for him

15  and stated that he would be at the Puyallup Gun Show the following week.  At the

16  November 2009 Puyallup Gun Show, Gussoni told an agent that selling guns was his

17  primary source of income and that he made enough money to "put food on the table."   He

18  also stated that he attends about 42 gun shows per year.  At the May 2010 Puyallup Gun

19  Show, Skiles indicated that he relied on the money he made from his gun sales, telling an

20  agent that his gun show earnings, combined with his disability, was sufficient to make a

21  living.  When the agent indicated he was also interested in re-selling firearms, Skiles said

22  that Gussoni was a great teacher on the subject.

23      As the investigation progressed, ATF investigators also uncovered federal and

24  state records demonstrating the high volume of firearms purchased by Skiles in support of

25  his business with Gussoni.  Pursuant to ATF regulations, FFLs are required to file reports

26  of multiple gun sales (MS records) to the ATF.  Thus, if an individual purchases more

27  than one weapon during an individual transaction, or over the course of a five day period,

28  the FFL must file a report with the ATF within 24 hours.  While FFLs are required to

Governments Trial Brief
CR11-5232BHS - 3
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  generate and maintain records of every sale or transfer of a firearm (called form 4473s),

2  these individual sales do not have to be reported to the ATF.  However, in the State of

3  Washington, locally operated FFLs are additionally required to report the sales or

4  transfers to the Department of Licensing, Firearms Section.  The purchase records for Mr.

5  Skiles are striking.  Between March 2009 and October 2010, Skiles purchased well over

6  one hundred firearms from Mary's Pistols, a licensed gun dealer in Tacoma, Washington.

7  Records from the State of Washington reflect the same.  Moreover, these records reflect

8  only a portion of the total number of firearms the two partners bought and sold during the

9  charged time period.  The records also indicate that Skiles and Gussoni were consistently

10  buying large numbers of the same types of low-value weapons.  The buying and selling of

11  such a high volume of inexpensive weapons is clearly indicative of being in the business

12  of firearms dealing

13       Moreover, after comparing the purchase records to the subsequent sales, the ATF

14  recognized that Skiles and Gussoni were selling firearms soon after purchasing them.  For

15  example, at the Centralia Gun Show on June 20, 2009, agents purchased and viewed

16  numerous weapons for sale at a table rented by Skiles.  They then compared those

17  weapons with those listed on the MS records.  The MS records showed that Skiles

18  purchased one weapon the day before the show, on June 19, 2009, and two others in late

19  April 2009.  There are numerous examples of this type of quick turnaround.  Thus, his

20  conduct was consistent with the repetitive sale of firearms for a profit, and not

21  demonstrative of someone collecting firearms for their personal collection, or as part of a

22  mere hobby.

23       The investigation also revealed that Skiles was formerly a licensed firearms dealer

24  and therefore familiar with the federal licensing requirements.  In February 2003, Skiles

25  applied for a Federal Firearms License with the ATF.  That year, an ATF Inspector met

26  with the Defendant regarding his application.  The agent reviewed the Acknowledgment

27  of Federal Firearms Regulations, multiple ATF Forms (including Form 4473), and the

28  record keeping requirements of an FFL.  She also inquired about the nature of his activity

Governments Trial Brief
CR11-5232BHS - 4
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

to determine if it constituted engaging in the business of dealing firearms.  She then advised Skiles of the laws and regulations applicable to the business of selling firearms.  He was also provided a copy of the Federal Firearms Regulations.  This book of regulations contains the definition of who is a "dealer" and the meaning of "engaging in the business" of dealing firearms pursuant to federal law.  The inspector noted that the "applicant was attentive of his FFL responsibilities" and that he "appears to have a good understanding of his responsibilities as an FFL."  In June 2003, ATF issued a federal firearms license to Skiles.  The license remained active until July 2006, when the license expired without a renewal request.  Thus, Skiles was clearly aware that the repetitive sale of firearms without a license was prohibited.  However, there is no indication that Mr. Skiles' behavior changed once his firearms licensed expired.  He continued to buy and sell firearms as a regular course of business.

Moreover, during his interactions with undercover agents at the gun shows, Skiles admitted that he had previously had a federal firearms license.  He explained that as an FFL he was subject to strict record keeping, including maintaining a record of sales of any firearm, filing out and maintaining the ATF Form 4473, and filing out a Multiple Sales form if a customer bought more than one gun.  He told the undercover agents that all of "the paperwork" was too much of a "hassle" and he preferred private party sales since it did not require any paperwork.

The money that the Defendant made from selling firearms at the gun shows was clearly a significant portion of his income.  Employment Security Department records from the State of Washington show that from 2003 to the present, the last recorded wages for Skiles were in 2006 and they totaled less than $15,000.  There were no records of any reported income for 2009 or 2010, the period during which most of the illegal gun selling too.  Similarly, there were no record of any wages from 2003 to the present for Gussoni.

On November 18, 2010, the ATF served a search warrant at Gussoni's residence,  The agents recovered approximately 132 firearms, including over 30 that had price tags.  Many of these weapons were purchased by Skiles from Mary's pistols.  An attempt to

Governments Trial Brief
CR11-5232BHS - 5
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   execute a search at Skiles' residence was also made, but the Defendant had moved from

2   the residence prior to the search.

3   **B.    PROCEDURE**

4       The Indictment currently before this Court was returned on April 28, 2011.  The

5   Court granted one continuance from the originally scheduled trial date.

6       **III. SUMMARY OF GOVERNMENT'S ANTICIPATED EVIDENCE**

7   **A.    WITNESSES**

8       The government anticipates that its first witness will be ATF Industry Operations

9   Supervisor Charles Spaulding.  SA Spaulding is an expert in the field of Federal Firearm

10  Licensing and Sales and has previously testified as such in this District.  SA Spaulding

11  will testify to the FFL licensing and application process generally, including fees,

12  required certifications, documentation requirements, audits, application meetings with

13  ATF Inspectors, and other practices related to the sale of firearms, including the types of

14  authorized firearms sales by both FFLs and non-licensees.  He will assist the jury in

15  understanding the various terminology they may hear during the course of the trial.

16      The government also anticipates calling the various ATF agents who participated

17  in the undercover investigations at the local gun shows.  Each will testify about their

18  interactions with the Defendant, the comments he and Gussoni made during the sales

19  transactions, and their observations about the volume and type of weapons that Skiles and

20  Gussoni were in the business of selling.

21  **B.    EXHIBITS**

22      The government expects to offer numerous documents recovered from the

23  execution of a federal search warrant at Gussoni's residence on November 18, 2010.

24  These include receipts from multiple firearm sales and purchases, firearms, business cards

25  belonging to Skiles, and other indicia of firearms dealing.  The government also expects

26  to introduce multiple business records, including registration records from various gun

27  shows relating to this investigation, and purchase and sales records maintained by the

28  ATF, the State of Washington, and Federal Firearms Licensees.

Governments Trial Brief
CR11-5232BHS - 6
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    The government also expects to introduce portions of audio and video recordings

2    of conversations with both Skiles and Gussoni.  As discussed above, during the course of

3    the investigation, ATF agents worked as undercover officers and attended various gun

4    shows at which both men were present and selling their firearms together.  During many

5    of these shows, agents wore hidden cameras to record their interactions with the Skiles

6    and Gussoni.

7    The government explicitly reserves the right *not* to introduce an item listed on its

8    Exhibit List, if it deems it no longer necessary.

9    **C.    STIPULATIONS**

10   The United States has proposed that the parties stipulate to the admissibility of

11   many of the records listed on the government's Exhibit List.  The government is similarly

12   willing to consider stipulation to the authentication of any exhibit's on the Defendant's

13   exhibit list.  This will expedite the introduction of these exhibits and save the parties from

14   calling additional foundation witnesses.  Should the parties not be able to reach agreement

15   on these stipulations, the government may request that the Court pre-admit many of those

16   business records on the basis of the Rule 902(11) certifications and also present live

17   records custodian testimony.

18   **D.    EXPERTS**

19   Rule 702 of the Federal Rules of Evidence permits testimony by experts if the

20   specialized knowledge will assist the trier of fact to understand the evidence or determine

21   a fact in issue.  *ER 702.*   The rule continues with an expansive definition of an expert --

22   "a witness qualified as an expert by knowledge, skill, experience, training, or education."

23    "The decision to admit expert testimony is committed to the discretion of the [trial] court

24   and will not be disturbed [on appeal] unless manifestly erroneous."  *United States v.*

25   *Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988).

26   As referenced above, the government anticipates expert testimony on firearms

27   business licensing requirements, regulations and practices through ATF Industry

28   Operations Supervisor Charles Spaulding.  To the extent that an expert agent's testimony

Governments Trial Brief
CR11-5232BHS - 7
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  is based upon information obtained other than through personal observation, it is

2  permissible, if it is based upon information of the type reasonably relied upon by experts

3  in forming expert opinions.

### IV.  APPLICABLE LAW

**A.    CONSPIRACY:  ELEMENTS OF OFFENSE**

6  Count 1 of the Indictment charges the Defendant with Conspiracy to Unlawfully

7  Deal in Firearms, in violation of Title 18, United States Code, Section 371.

8  To convict the Defendant of conspiracy, the government must prove that:  (1) there

9  was an agreement between two or more persons to commit a particular crime charged in

10  the indictment (here, the unlawful dealing of firearms); (2) the Defendant became a

11  member of the conspiracy knowing at least one of its objects and intending to help

12  accomplish it; and (3) one of the members of the conspiracy performed at least one overt

13  act for the purpose of carrying out the conspiracy.  The jury must all agree as to the

14  particular overt act.  *See Ninth Circuit Model Jury Instructions* 8.16 (2010 edition); s*ee*

15  *also United States v. Falcone*, 311 U.S. 205, 210 (1940).

16  The agreement to engage in criminal activity between the conspirators need not be

17  explicit and may be inferred from circumstantial evidence.  *United States v. Thomas*, 586

18  F.2d 123, 127-32 (9th Cir. 1978).  Indeed, the agreement "may consist of nothing more

19  than a tacit understanding."  *United States v. Mohr*, 728 F.2d 1132, 1135 (8th Cir. 1984).

20  Proving the crime of conspiracy requires proof of an overt act.  *Falcone,* 311 U.S.

21  at 210.  The overt act need not itself be a crime; its function is merely to show "that the

22  conspiracy is operative."  *United States v. Buckner*, 610 F.2d 570, 573 (9th Cir. 1979).

23  The government is not required to prove that each conspirator knew the identity,

24  location, number, and function of all of his co-conspirators, or that all worked together

25  consciously to achieve a desired end, or even that each conspirator was aware of all of the

26  details of the enterprise.  *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977),

27  *cert. denied*, 434 U.S. 971 (1977); *United States v. Baxter*, 492 F.2d 150, 157-160

28  (9th Cir. 1973), *cert. denied*, 416 U.S. 940 (1974); *Daily v. United States*, 282 F.2d 818,

Governments Trial Brief
CR11-5232BHS - 8
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

820 (9th Cir. 1960); *Marino v. United States*, 91 F.2d 691, 696 (9th Cir. 1937).

Furthermore, "[o]nce the government has established that a conspiracy exists, evidence of only a slight connection is necessary to convict a defendant of knowing participation in it." United *States v. Arbelaez*, 719 F.2d 1453, 1458 (9th Cir. 1983) (quoting *United States v. Kenny*, 645 F.2d 1323, 1334 (9th Cir. 1981)), *cert. denied*, *Ponce de Leon v. United States*, 467 U.S. 1255 (1982); *Kearny*, 560 F.2d at 1362.

### 1.     Criminal Liability of Co-conspirators

One who joins an ongoing conspiracy is bound by all of the prior acts of co-conspirators taken in furtherance of the conspiracy. *See Ninth Circuit Model Jury Instructions 8.20* (2003 Edition); s*ee also United States v. Traylor*, 656 F.2d 1326, 1337 (9th Cir. 1981). A co-conspirator is also responsible for all reasonably foreseeable crimes committed in furtherance of the conspiracy, even if he or she did not participate in or have knowledge of their commission. *Pinkerton v. United States*, 328 U.S. 640 (1946); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1202 (9th Cir. 2000). In addition, the act of an innocent person done at the urging of one member of the conspiracy and in furtherance of the conspiracy is deemed to be the act of all of the conspirators. *United States v. Montgomery*, 440 F.2d 694, 696 (9th Cir. 1971).

### 2.     Knowledge and Intent

To establish the required knowledge and intent, it is not necessary to show that each co-conspirator was aware of all of the details of the conspiracy, or each of the parties involved. When one joins an illegal venture, one becomes part of the scheme although he or she may know only of his or her own share of wrongdoing. *Blumenthal v. United States*, 332 U.S. 539, 556-57 (1947); *Chavez v. United States*, 275 F.2d 813, 817 (9th Cir. 1960). The government need only show that each conspirator knew, or had reason to know, that the benefits to be derived from the scheme were likely dependent on the success of the entire venture. *United States v. Baxter*, 492 F.2d 150, 158 (9th Cir. 1973).

Governments Trial Brief
CR11-5232BHS - 9
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    The law is also clear that a defendant cannot escape criminal liability by avoiding

2    learning the truth.  A defendant can be found guilty, even if he lacked positive

3    knowledge, if the government proves beyond a reasonable doubt that the defendant's

4    ignorance was solely and entirely a result of his conscious purpose of avoiding learning

5    the truth.  *United States v. Jewell*, 532 F.2d 697, 704 (9th Cir. 1976) (*en banc*),

6    *cert. denied*, 426 U.S. 951 (1976).

7    **B.    UNLAWFUL DEALING IN FIREARMS:  ELEMENTS OF OFFENSE**

8        Count 2 of the Indictment charges the Defendant with Unlawful Dealing in

9    Firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A).

10       To convict the Defendant of unlawful firearm dealing, the government must prove

11   that: (1) that the Defendant acted "willfully," in that he knew it was unlawful to deal

12   firearms without a license; (2) that he was engaging in the business of dealing firearms;

13   and (3) that he did not have a Federal Firearms License.

14       Title 18, United States Code, Section 922(a)(1)(A) states in full:

15           It shall be unlawful for any person except a licensed importer, licensed
     manufacturer, or licensed dealer to engage in the business of importing, manufacturing, or
16   dealing in firearms, or in the course of such business to ship, transport or receive any
     firearm in interstate or foreign commerce.

17
         The term "engage in the business of" is defined in part as:
18
             . . . a person who devotes time, attention, and labor to dealing in firearms
19   as a regular course of trade or business with the principal objective of livelihood
     and profit through the repetitive purchase and resale of firearms, but shall not
20   include a person who makes occasional sales, exchanges, or purchases of firearms
     for the enhancement of a personal collection or for a hobby or who sells all or part
21   of a personal collection.

22   18 U.S.C. § 921(a)(21)(C).

23       The term "principal objective of livelihood and profit" means:

24           . . . that the intent underlying the sale or disposition of firearms is
     predominantly one of obtaining livelihood and pecuniary gain, as opposed to other
25   intents, such as improving or liquidating a personal firearms collection: *Provided*,
     that proof of profit shall not be required as to a person who engages in the regular
26   and repetitive purchase and disposition of firearms for criminal purposes or
     terrorism.

27
     18 U.S.C. § 921(a)(22).
28

1    **1.    Willfulness Requirement**

2    In *Bryan v. United States*, 524 U.S. 184 (1998), the Supreme Court reviewed the

3    term "willfully" both in general and the specific context of Title 18, Section U.S.C.

4    922(a)(1)(A).  Generally, when a statue reads "willfully," the act must be undertaken with

5    a "bad purpose."  *Id.*  In other words, the "Government must prove that the defendant

6    acted with knowledge that his conduct was unlawful.  *Id.* at 191-92, quoting *Ratzlaf v.*

7    *United States*, 510 U.S. 135 (1994).  In the context of the unlawful dealing statute,

8    however, the Government need only prove that the defendant knew that his conduct was

9    unlawful - not that he knew of the federal licensing requirement.  *Id.* at 199.  In *United*

10   *States v. Tyson*, 2011 U.S. App. LEXIS 15895 (3rd Circuit 2011), the Court found that

11   evidence that the defendant signed the ATF 4473 purchase form was alone sufficient to

12   prove willfulness.

13

14   "This form contains language printed in bold directly above the signature line that
     states, 'I ... understand that the repetitive purchase of firearms for the purpose of
15   resale for livelihood and profit without a Federal firearms license is a violation of
     the law.' Each time he signed a Form 4473, Tyson certified his knowledge of the
16   law. This alone is sufficient to demonstrate willfulness in the circumstances
     present here."

17   *Id.* at 24.

18   The same facts will be proven in this trial.  The evidence will show that Skiles

19   purchased well over 100 firearms from a licensed dealer.  During each transaction he

20   filled out the ATF Form 4473, acknowledging his understanding of the law.  This

21   evidence alone is sufficient to establish that the Defendant was knowingly violating the

22   firearms regulations.  Moreover, the fact that Skiles was previously a licensed dealer

23   himself is clear proof that he was aware of the federal firearms regulations and the

24   prohibitions related to private party sales.

25   **2.    Engaging in the Business of Dealing Firearms**

26   By the terms of the statute, a defendant engages in the business of dealing in

27   firearms when; 1) his principal motivation is economic (i.e., "obtaining livelihood" and

28   "profit"); and 2) he pursues this objective through the repetitive purchase and resale of

Governments Trial Brief
CR11-5232BHS - 11
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    firearms.  As the Ninth Circuit stated in *United States v. Van Buren*, 593 F.2d 125, 126

2    (9th Cir. 1979), "where transactions of sale, purchase or exchange of firearms are

3    regularly entered into in expectation of profit, the conduct amounts to engaging in

4    business."  When looking at the economic factors, it is also clear that the amount of

5    money a defendant may make through the sale of firearms is not critical to the analysis.

6    "Such business need not be the defendant's primary business, nor must he make a certain

7    profit from the business."  *United States v. Brier*, 813 F.2d 212, 214 n. 1 (9th Cir. 1987).

8    *See also United States v. Angelini*, 607 F.2d 1305, 1309 (9th Cir. 1979); *United States v.*

9    *Nadirashvili*, 2011 U.S. App. LEXIS 17518 (2nd Cir. 2011) ("[t]he government need not

10   prove that dealing in firearms was the defendant's primary business.); Section 922(a)(22)

11   (objective of livelihood and profit contrasted with improvising or liquidating a personal

12   firearms collection.).

13          There is also no articulated bright line rule regarding the specific type of conduct

14   that will constitute being engaged in the business of dealing firearms.  It is not necessary

15   to prove a specific number or frequency of sales, or to prove a specific dollar volume of

16   sales.  Quite simply, a person engages in the business of dealing in firearms "if he has

17   guns on hand or is ready and able to procure them ... for the purpose of selling some or all

18   of them to such persons as he might from time to time accept as customers."  *United*

19   *States v. Brier*, 813 F.2d 212, 214 n. 1 (9th Cir. 1987).  "The statute is aimed at those who

20   hold themselves out as a source of firearms, or those who engage in regular and repeated

21   buying and/or selling of firearms, as opposed to an isolated or occasional transaction."

22   *Id*; *see also Nadirashvili* ("Nor is there a 'magic number' of sales that need be specifically

23   proven.  Rather, the statute reaches those who hold themselves out as a source of

24   firearms. Consequently, the government need only prove that the defendant has guns on

25   hand or is ready and able to procure them for the purpose of selling them from [time] to

26   time to such persons as might be accepted as customers."); *United States v. Beecham*, 993

27   F.2d 1539 (4th Cir. 1993) ("A person engages in the business of dealing in firearms if

28   they are engaged in a greater degree of activity than the occasional sale of a hobbyist or

Governments Trial Brief
CR11-5232BHS - 12
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   collector, and they devote time, attention, and labor to dealing in firearms as a trade or

2   business with the intent of making money.").

3        The Third Circuit has provided some guidance as to how the government could

4   show that a defendant is engaged in the business of dealing firearms, and not merely a

5   hobbyist.  In *United States v. Palmieri*, 21 F.3d 1265 (3rd Cir. 1994), the Court held that

6   the fact finder should consider all of the circumstances surrounding the sales to determine

7   its nature, stating that "the location of the sales, the time and conditions under which the

8   sales occur, the defendant's behavior before, during and after the sales, the price charged

9   for and characteristics of the firearms sold, and the intent of the seller are all potentially

10   relevant indicators of whether one has 'engaged in the business' of dealing." *Id*. at 1268.

11   In that case, the defendant was found guilty of being engaged in the business of firearms

12   dealing without a license when the evidence against him on that offense consisted largely

13   of the defendant's sale of five firearms to undercover agents on three separate occasions.[1]

## V. <u>EVIDENTIARY ISSUES</u>

### A.   DECLARATIONS OF CO-CONSPIRATORS

16        The government will present evidence of statements made by the conspirators

17   during and in furtherance of the conspiracy charged in Count 1.  These statements are

18   admissible pursuant to Fed. R .Evid. 801(d)(2)(E), which provides that a statement by a

19   co-conspirator made during and in furtherance of a conspiracy is not hearsay.  Under the

---

[1] Similarly, in *United States v. White*, 175 Fed. Appx. 941 (9th Cir. 2006), an unpublished decision from the Ninth Circuit, the Court upheld a verdict convicting the defendant of unlawful firearms dealing after the government introduced evidence that he sold approximately 23 firearms, made a profit of $50 per firearm, and admitted that he was selling guns to make money.  *See also*, *United States v. Shan*, 361 Fed. Appx. 182 (2nd Cir. 2010) ("Specifically, the government presented evidence that defendant sold two firearms within roughly one month and that Shan acknowledged on tape that he had a source of supply for other weapons. This is sufficient to establish that Shan held himself out as a source of weapons."); *United States v. Orum*, 106 Fed. Appx. 972 (6th Cir. 2004) ("First, it is undisputed that Orum did not have a license to deal in firearms. Second, the evidence presented at trial indicates that Orum engaged in the business of dealing firearms. This evidence included testimony by confidential informants that Orum frequented flea markets and gun shows where he displayed and sold firearms; that he offered to sell firearms to them on several occasions and actually sold them three different firearms on two different occasions; and that he bought and sold firearms for a profit. Third, the evidence presented indicates that Orum knew his actions were unlawful. The confidential informants testified that Orum sold them firearms even though he knew they were convicted felons. Moreover, the evidence revealed that Orum previously held a license to deal firearms but 'gave it up' because he did not 'appreciate government intrusion.'").

Governments Trial Brief
CR11-5232BHS - 13
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   co-conspirator rule, statements by a co-conspirator made in furtherance of the alleged

2   conspiracy are admissible against all co-conspirators, if there is evidence apart from the

3   statements themselves that establishes that the conspiracy existed at the time of the

4   statements, and that the members of the conspiracy against whom statements are

5   introduced had knowledge of, and participated in, the conspiracy.  *United States v.*

6   *Fleishman*, 684 F.2d 1329, 1337 (9th Cir. 1982); *United States v. Federico*,

7   658 F.2d 1337, 1342 (9th Cir. 1981).

8         Statements are in furtherance of a conspiracy if they keep a conspirator abreast,

9   *United States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir. 1987); induce continued

10   participation, *United States v. Eaglin*, 571 F.2d 1069, 1083 (9th Cir. 1977); set in motion

11   transactions that are an integral part of the conspiracy, *United States v. Yarborough*, 852

12   F.2d 1522, 1535 (9th Cir. 1988); allay fears, *United States v. Layton*, 720 F.2d 548, 557

13   (9th Cir. 1983); explain co-conspirators' roles, *United States v. Moody*, 778 F.2d 1380,

14   1382-83 (9th Cir. 1985), *amended by*, 791 F.2d 707 (9th Cir. 1986); or aim to avoid

15   detection, *United States v. Sears*, 663 F.2d 896, 905 (9th Cir. 1981).

16         The Ninth Circuit further requires "substantial independent evidence of the

17   existence of a conspiracy, and slight evidence of the defendant's connection with the

18   conspiracy" in determining the admissibility of statements under Fed . R. Evid.

19   801(D)(2)(E).  *Fleishman*, 684 F.2d at 1338.  Substantial independent evidence of the

20   conspiracy will be established through the testimony of the undercover agents and

21   Gussoni should he be called to testify.

22   **B.   CO-CONSPIRATOR GUILTY PLEAS**

23         The government may call as a witness the Defendant's former co-defendant,

24   Kenneth Gussoni, during its case-in-chief.  He has entered a guilty plea to Count 1 of the

25   Indictment:  Conspiracy to Unlawfully Deal in Firearms.  During the direct examination

26   of Gussoni, the government intends to ask him about his guilty plea and the terms of his

27   plea agreements with the government.

28

Governments Trial Brief
CR11-5232BHS - 14
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   This testimony is admissible.  As the Ninth Circuit has held, "when the prosecution

2   examines the co-defendant as its witness in support of its case-in-chief, a question about

3   the guilty plea is legitimate as the purpose is to support the reasonableness of the witness'

4   claim to firsthand knowledge because of admitted participation in the very conduct which

5   is relevant."  *United States v. Halbert*, 640 F.2d 1000, 1005 (9th Cir. 1981); *see also*

6   *United States v. Rewald*, 889 F.2d 836, 865 (9th Cir. 1989), *amended on other grounds*,

7   902 F.2d 18 (1990); *United States v. Smith*, 790 F.2d 789, 793 (9th Cir. 1986).

8   　　　The government acknowledges that the guilty plea may not be offered as

9   substantive evidence of Defendant's guilt.  To that end, the Court should give an

10   appropriate limiting instruction that tells the jury in "unequivocal language" that the plea

11   may not be considered as evidence of Skiles' guilt.  *Halbert*, 640 F.2d at 1005 (directing

12   that the jury "should be told in unequivocal language that the plea may not be considered

13   as evidence of a defendant's guilt.").

14   **C.   HEARSAY ISSUE: OUT OF COURT STATEMENTS NOT OFFERED TO**

15   **PROVE TRUTH OF MATTER ASSERTED**

16   　　　"Hearsay is a statement, other than one made by the declarant while testifying at

17   the trial or hearing, offered in evidence to prove the truth of the matter asserted."

18   Fed. R. Evid. 801(c).  The admission of hearsay into evidence is generally proscribed by

19   Rule 802.  When it is relevant that an out-of-court statement was made, however, and the

20   statement is offered exclusively to prove that it was made, it is not hearsay and is

21   therefore admissible.  *See Williams v. United States*, 458 U.S. 279 (1982).  That is

22   because statements not offered for their truth are not hearsay.  Fed. R. Evid. 801(c).

23   　　　In certain instances, the government may offer statements made by out-of-court

24   declarants not to prove the truth of the matters asserted, but merely to explain the

25   subsequent actions of the witnesses.  Therefore, the statements would not constitute

26   "hearsay" within the definition of Rule 801.  *See United States v. Catano*,

27   65 F.3d 219 (1st Cir. 1995) (informant's part of conversation with agent was not hearsay,

28   because it was offered for context and not to prove the truth of the informant's

Governments Trial Brief
CR11-5232BHS - 15
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   statements); *United States v. Love*, 767 F.2d 1052 (4th Cir. 1985) (agent's testimony

2   regarding information he received from third party was not hearsay, since it was offered

3   to explain the preparations agents took in anticipation of the accused's arrest);

4   *United States v. Rubin*, 591 F.2d 278 (5th Cir. 1979) (defendant union officer's testimony

5   that former union presidents had told him constitutions were flexible and could be

6   interpreted to fit local needs was not objectionable hearsay, because it was not offered to

7   prove the truth of what past union presidents said, but to show the effect such statements

8   had on defendant's actions); *United States v. Stout*, 599 F.2d 866 (8th Cir. 1979) (police

9   officer's description of a vehicle, as transmitted to him by third party, was admissible to

10  prove why the officer stopped the car, and was not objectionable hearsay).

11  **D.    DEFENDANT'S OWN STATEMENTS**

12      The government will seek to introduce statements made by the Defendant during

13  the course of the investigation into this criminal conspiracy.  This includes the various

14  statements made to undercover officers at the gun shows discussed above.  It also

15  includes statements made to ATF agents following the execution of the search warrants.

16  Obviously, statements made by the Defendant are by definition not hearsay when offered

17  by the government.  Fed. R. Evid. 801(d)(2).  However, the converse is not true.  An

18  out-of-court statement of a declarant offered by the declarant on his own behalf is

19  inadmissible hearsay.  *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000);

20  *Williamson v. United States*, 512 U.S. 594, 599 (1994).

21  **E.    RECORDED CONVERSATIONS**

22      The Government will offer excerpts of audio recordings of statements of the

23  Defendant and others made during conversations with undercover agents.  Although these

24  conversations are out-of-court statements, they can be admitted without violating the

25  hearsay rule.  The Defendant's statements are not hearsay because they are admissions of

26  a party opponent under Rule 801(d)(2).  The statements of the Special Agents during the

27  consensual audio recording would not be considered hearsay, as they would be offered to

28  provide context for Defendant's side of the conversation, and not to prove the truth of the

Governments Trial Brief
CR11-5232BHS - 16
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

matters asserted.  *See Catano*, 65 F.3d 219 (informant's part of conversation with agent was not hearsay, because it was offered for context and not to prove the truth of the informant's statements).

Admission of evidence of conversations, electronically monitored with the consent of one of the speakers, violates no Fourth Amendment right of an accused, nor is the use of such evidence limited to corroboration of the witness' testimony.  *United States v. White*, 402 U.S. 745 (1971), *United States v. Bonanno*, 487 F.2d 654 (2nd Cir. 1973).

For English-language tapes, after a proper foundation has been laid for the introduction of the relevant, recorded conversations, the tapes may be played to the jury.  *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), *cert. denied*, 421 U.S. 961 (1975); *see also*, *United States v. Armijo*, 5 F.3d 1229 (9th Cir. 1993).  A complaint of inaudibility is addressed to the sound discretion of the court.  *United States v. Fuentes-Montijo*, 68 F.3d 352 (9th Cir. 1995).  Tapes that are partially unintelligible are admissible unless those portions are so substantial as to render the recordings as a whole untrustworthy.  *United States v. Llinas*, 603 F.2d 506 (5th Cir. 1979), *cert. denied*, 444 U.S. 1079 (1980).

## F.   BUSINESS AND GOVERNMENT RECORDS

As outlined above, the government may offer into evidence business records from the State of Washington, certain Federal Firearms Licenses, and the ATF.  The government has proposed that the parties stipulate to the authenticity and admissibility of each of these files.

If the defense does not stipulate to these records, the government will offer them into evidence as business records, via the testimony of representatives from the various entities.  The admissibility of these items is governed by Fed. R. Evid. 803(6).  Any person familiar with the business record-keeping practices of the business who can identify the record at issue as having been made in the ordinary course of business is a sufficient foundational witness.  Personal knowledge of the document is not required, and does not affect its admissibility.  *United States v. Pitman*, 475 F.2d 1335, 1337 (9th Cir.

Governments Trial Brief
CR11-5232BHS - 17
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1973).  Similarly, a record generated by a third party and received and relied upon in the

ordinary course, such as an invoice, becomes a business record of the company relying

upon it.  *United States v. Childs*, 5 F.3d 1328, 1333-34 (9th Cir. 1993).

The government need not show the records are accurate as such; instead, it need

only show that the records are kept in the ordinary course and are relied upon for the

operation and management of the business.  *Johnson v. United States*, 325 F.2d 709, 711

(9th Cir. 1963).  Incompleteness, ambiguities, and inaccuracies in records go to the

weight to be given the evidence, not to its admissibility.  *United States v. Catabran*, 836

F.2d 453 (9th Cir. 1988); *United States v. Hudson*, 479 F.2d 251, 254 (9th Cir. 1972).

The majority of the documents the government intends to offer are photocopies.

The Federal Rules of Evidence allow for the admission of "duplicates," including

photocopies, to the same extent as originals, unless a genuine question as to the

authenticity of the original is raised.  *United States v. Morgan*, 555 F.2d 238, 243

(9th Cir. 1977); Fed. R. Evid. 1001(4), 1003.

## G.  SUMMARIES AND CHARTS

In view of the nature of the charges, the government's evidence may include

summary testimony and exhibits.  In particular, the government may introduce summary

exhibits showing the purchase and sale history of the firearms relevant to offenses.

FRE 1006 provides that: ". . . the contents of voluminous writings . . . which

cannot be conveniently examined in court may be presented in the form of a chart,

summary or calculation.  The originals, or duplicates, shall be made available for

examination or copying, or both, by other parties at a reasonable time and place.  The

court may order that they be produced in court." Fed. R. Evid. 1006.  The proponent of

the summary must establish the admissibility of the underlying documents as a condition

precedent for the introduction of the summary into evidence.  *United States v. Catabran*,

836 F.2d 453, 458 (9th Cir. 1988); *United States v. Johnson*, 594 F.2d 1253, 1257

(9th Cir. 1979).  However, Rule 1006 does not require the underlying documents be first

admitted into evidence, although the fact that they may have been admitted does not

Governments Trial Brief
CR11-5232BHS - 18
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    preclude the use of the summary.  *United States v. Meyers*, 847 F.2d 1408, 1412

2    (9th Cir. 1988).

3         The proponent must also show that the underlying documents were made available

4    to the opposing party for inspection.  *Catabran*, 836 F.2d at 458.  The records which may

5    be the subject of the summary exhibits have been made available in their entirety to the

6    defense.

7    **H.    VOIR DIRE**

8         The government respectfully requests that the Court allow 45 minutes for each

9    party to directly and verbally ask potential jurors significant follow-up questions during

10   the voir dire process.  The function of the voir dire is to ferret out prejudices in the venire

11   that threaten the defendant's Sixth Amendment right to a fair and impartial jury.  *United*

12   *States v. Howell*, 231 F.3d 615, 627 (9th Cir. 2000) (citing, *Mu'Min v. Virginia*, 500 U.S.

13   415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).  The Federal Rules of Criminal

14   Procedure permit a trial judge to conduct an examination of prospective jurors, during

15   which the court shall permit the defendant or the defendant's attorney and the attorney for

16   the government to supplement the examination by such further inquiry as it deems proper.

17   *Id.*, at 628; Fed.R.Crim.P. 24(a).  Whether to allow supplemental questions proposed by

18   counsel is within the sound judicial discretion of the district court.  *Id.*, at 628 (quoting,

19   *United States v. Baldwin,* 607 F.2d 1295, 1297 (9th Cir.1979).

20        All of the lawyers involved in this case have significant experience in questioning

21   jurors to determine bias.  The issues presented by this case are unique and may require

22   more in-depth questioning that typically necessary.  The government anticipates that a

23   number of the prospective jurors will be personally familiar with gun shows and

24   themselves be licensed gun owners.  The government also anticipates that many jurors

25   will have strong opinions about federal gun laws and regulations.  Given these potentially

26   sensitive issues, it may be necessary to spend more time with individual jurors to probe

27   their potential biases.

28

Governments Trial Brief
CR11-5232BHS - 19
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    Oftentimes, jurors make statements which require an immediate follow-up

2  question in order to obtain an honest and heartfelt response.  A delayed, written follow-up

3  question is often an insufficient means to elicit honest answers.  Moreover, it is often

4  helpful to allow jurors to respond directly to statements made by other jurors.  This is

5  especially true when discussing sensitive issues.

6    The easiest way to address these issues is to allow each side, defense and

7  government, an equal opportunity to directly address the jurors about some of the issues

8  that they will need to discuss during this case.  The Government respectfully requests that

9  the Court grant each side a total of 45 minutes to follow-up on the Court's questions of

10  the jury.

11            **VI.  <u>CONCLUSION</u>**

12    This brief is intended to acquaint the Court with some of the legal issues that may

13  come up at trial.  If other issues present themselves, the government will supplement this

14  submission as necessary.

15    DATED this 12th day of October, 2011.

16

17            Respectfully submitted,

18            JENNY A. DURKAN
            United States Attorney

19            s/ Nicholas W. Brown
            NICHOLAS BROWN

20            ROGER ROGOFF
            Assistant United States Attorneys

21            United States Attorney's Office
            700 Stewart Street, Ste. 5220

22            Seattle, Washington 98101
            Facsimile: 206-553-0755

23            Phone: 206-553-1565
            E-mail: Nicholas.Brown@usdoj.gov

24

25

26

27

28

Governments Trial Brief
CR11-5232BHS - 20
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2011 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/Karen Wolgamuth*
KAREN WOLGAMUTH
Paralegal
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-5050
FAX:   (206) 553-4440
E-mail: karen.wolgamuth@usdoj.gov

Governments Trial Brief
CR11-5232BHS - 21
*United States v. Skiles*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970